Dear Representative Blackburn:[1]
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Is it a lawful contract for the Oklahoma City Public School District and the employees' union to enter into an agreement to have 24 pay periods in the current pay year, with the first pay period ending on August 31, 2003, and with the employees reporting to work on either August 27 or 29, 2003?
¶ 1 The Oklahoma City Public School District typically pays its employees in 24 equal payments over a 12-month period. See
Letter from Debbie Blackburn, State Representative, State Capitol Bldg., Room 301A, to Drew Edmondson, Oklahoma Attorney General (July 1, 2003) (on file with the Oklahoma Attorney General's Office). The District's employees do not work the same number of hours during each of the 24 pay periods. For instance, the employees do not work as many hours during the pay periods which cover fall break, Christmas break, spring break or in the summer pay periods. In the Oklahoma City Public School District, the last payday for the past pay year was August 15, 2003. Id. This was pursuant to contracts which expired on June 30, 2003. Okla. Const. art. 10, § 1; A.G. Opin. 71-360, 389. The contracts for the 2003-2004 school year began on July 1, 2003. Id. The District, in an attempt to save on utility expenses, delayed the start of the 2003 school year, and many of the District's employees were not to report to work until August 27 or 29, 2003.See Letter from Debbie Blackburn, State Representative. The question arose because of a possibility that the Oklahoma City Public School District employees might skip one pay period (August 31, 2003) due to the delay in the start of the 2003 school year. Id.
¶ 2 The issue is whether the District's employees can be paid the first of their 24 equal payments on August 31, 2003, when some services are performed prior to the first pay period. This is the fact scenario advanced in your letter — that the employees will report to work on August 27 or 29, 2003, and it is assumed the employees will be performing all of the services requested of them by the District during this first pay period, prior to the first pay day, August 31, 2003. See Letter from Debbie Blackburn, State Representative. The answer to this question hinges on whether the contractual relationship between the parties provides adequate consideration such that a gift is not given to a private individual.
¶ 3 When examining whether the State could pay a private institution for the care of orphan children in Childrens Home Welfare Association v. Childers, 171 P.2d 613, 614 (Okla. 1946), the court concluded that the private institution was rendering services to the State by "furnishing the state a valuable consideration sufficient to support the payment to [the institution] by the state of the state's money raised by public taxes." Id. Herein, as long as there is adequate consideration between the parties in the contractual relationship, then the first of the 24 equal payments may be made on August 31, 2003.
¶ 4 Ultimately, whether there is adequate consideration between the parties in the contractual relationship is a question of fact which cannot be answered in an Attorney General's Opinion. 74O.S. 2001, § 18b[74-18b](A)(5).
¶ 5 It is, therefore, the official Opinion of the AttorneyGeneral that:
 As long as there is adequate consideration between the District and the employee in the contractual relationship, then the first of the 24 equal payments may be made.
 Whether there is adequate consideration in the particular contractual relationship is a question of fact which cannot be answered in an Attorney General's Opinion. 74 O.S. 2001, § 18b(A)(5).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 LISA DAVIS Assistant Attorney General
[1] This question was initially asked by both Representative Blackburn and Senator Keith Leftwich, Majority Whip. Unfortunately, before the Opinion was issued, Senator Keith Leftwich passed away.